# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DERRICK CARRINGTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1360 (ESH) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| **NATIONAL ASSOCIATION OF LETTER** ) | |
| **CARRIERS, AFL-CIO,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Derrick Carrington brings this hybrid breach of contract and duty of fair representation action against his former employer, the United States Postal Service ("USPS"), and his former union, the National Association of Letter Carriers, AFL-CIO ("Union"), pursuant to section 301 of the Labor Management Relations Act ("LMRA"). Plaintiff was employed by the USPS from February 4, 2006, until his termination on January 2, 2010. Plaintiff alleges that the USPS breached the Collective Bargaining Agreement and that the Union failed to fairly represent him in two grievance proceedings related to his termination. Before the Court are defendants' motions for summary judgment. (Def. Nat'l Ass'n of Letter Carriers Mot. for Summ. J. ("Union Mot."), March 3, 2014 [Dkt. No. 29-2]; Def. United States of America's Mot. for Summ. J. ("USPS Mot."), March 5, 2014 [Dkt. No. 30].) For the following reasons, the Court will grant both motions.

# FACTS

Plaintiff began his employment with the USPS on February 4, 2006. (USPS Statement of Facts ("USPS SOF") [Dkt. No. 30] ¶ 1.) In September 2008, the USPS suspended plaintiff from work for fourteen days for irregular attendance. (*Id.* ¶ 2.) Between August 20 and November 6, 2009, plaintiff had fourteen unscheduled absences, thirteen of which were without leave. (Notice of Removal, Dec. 2, 2009 [Dkt. No. 30-1 Ex. 2] at 1; *see also* Dep. of Derrick Carrington, Dec. 23, 2013 [Dkt. No. 30-1 Ex. 17] at 31.) During a November 16, 2009 pre-disciplinary interview, a manager questioned plaintiff about his unscheduled absences. Plaintiff responded that "[d]uring that time, [he] was relieving stress from this station, so [he] did not report to work." (Notice of Removal at 2; *see* USPS SOF ¶¶ 5-6.) The USPS considered plaintiff's stated reason for his poor attendance "unacceptable," and on December 2, 2009, it issued a Notice of Removal. (USPS SOF ¶ 9; *see* Notice of Removal at 1.)

Because plaintiff was not at work the day the USPS issued his Notice of Removal, the USPS mailed the Notice to the two addresses it had on file for plaintiff. (USPS SOF ¶¶ 10, 13-16.) On December 3, 2009, the Notice was successfully delivered via certified and delivery confirmation mail to an out-of-date address in Northwest Washington, D.C. (*Id.* ¶¶ 17-19; Pl.'s Statement of Facts ("Pl.'s SOF") [Dkt. No. 32-1] ¶ 17.) The next day, the Notice was successfully delivered via delivery confirmation mail to plaintiff's address of record in Northeast Washington, D.C. Although that address was up-to-date, the attempted delivery via certified mail – requiring a signature – was unsuccessful. (USPS SOF ¶ 20; Pl.'s SOF ¶ 1.) According to Kachisa McCall, plaintiff's live-in fiancé at the time, a copy of the Notice was not received at their address. (*See* Decl. of Kachisa McCall, April 2, 2014 [Dkt. No. 32-4] ¶ 5.)

2

On December 1, 2009 – a day before the USPS issued the Notice of Removal – plaintiff went missing. Plaintiff cannot recall where he was from that time until December 17, 2009, when he voluntarily checked into a psychiatric hospital to seek treatment for depression. (Pl.'s SOF ¶¶ 23-24.) Ms. McCall was also unaware of plaintiff's whereabouts during that time period. (*Id.* ¶¶ 3-4.) On the same day plaintiff checked into the hospital, Ms. McCall received at their address a letter from the USPS notifying plaintiff of a pre-disciplinary interview scheduled for December 24, 2009. (*Id.* ¶ 5.) At some point in the next two days, Ms. McCall contacted plaintiff's supervisor about the letter, at which point she learned that the USPS planned to terminate plaintiff's employment. (McCall Decl. ¶ 7.) Ms. McCall told plaintiff's supervisor that plaintiff was submitting a grievance and then contacted a Union representative. (*Id.* ¶¶ 7-8.) On December 18, 2009, Ms. McCall forwarded medical documentation regarding plaintiff's psychiatric treatment to the USPS and the Union. (*Id.* ¶ 10.)

Plaintiff was discharged from psychiatric care on December 22, 2009, at which point he took over communications with the USPS and the Union regarding his removal. (Pl.'s SOF ¶ 11; *see* USPS SOF ¶ 23.) The Union initiated an Informal Step A grievance (the "removal grievance") with the USPS on December 29, 2009. (USPS SOF ¶ 26.)

Article 15.2 Informal Step A(a) of the Collective Bargaining Agreement ("CBA") between the USPS and the Union provides that:

> Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. This constitutes the Informal Step A filing date. . . . The Union also may initiate a grievance at Informal Step A within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance.

3

(CBA [Dkt. No. 29-4 Ex. A] Art. 15.2 Informal Step A(a).) The USPS denied the Informal Step A grievance as untimely under Article 15.2 because the grievance was not initiated within fourteen days of the delivery of the Notice of Removal to plaintiff's address of record. (USPS SOF ¶ 27.)

The Union was entitled to file a written appeal of the Informal Step A grievance opinion to Formal Step A "within seven (7) days of the date of the [Informal Step A] discussion." (CBA Art. 15.2 Informal Step A(c).) On December 31, 2009, the Union mailed to the USPS a list of "Formal Step A Appeals" that included plaintiff's removal grievance number. (Union Statement of Facts ("Union SOF") [Dkt. No. 29-3] ¶ 13.) The USPS removed plaintiff from its rolls on January 12, 2010.

On April 27, 2010, the USPS and the Union agreed to undertake a "blitz" process to settle a significant number of backlogged grievances. (USPS SOF ¶ 31.) On August 19, 2010, during the "blitz," Union representative Paul Simmons and USPS representative Alice Bell signed a Formal Step A agreement that contemplated settling plaintiff's grievance by reducing plaintiff's removal to a suspension and allowing plaintiff to return to work without back pay on August 21, 2010. (*Id.* ¶ 33; Union SOF ¶ 16.) Upon being informed of the agreement, USPS management – including plaintiff's supervisor – concluded that the agreement was not enforceable because the removal grievance had been rejected as untimely and therefore was not pending when the settlement agreement was signed. (USPS SOF ¶ 35.) During the "blitz," Alice Bell had not raised the issue of whether plaintiff's removal grievance had been initiated in a timely fashion at the Informal Step A or whether the Union had timely appealed the grievance to Formal Step A. (Union SOF ¶ 16.)

The Union then initiated on plaintiff's behalf a new Informal Step A grievance (the "non-compliance grievance") regarding the USPS's refusal to honor the settlement agreement signed during the "blitz" process. (USPS SOF ¶ 37; Union SOF ¶ 17.) The USPS and the Union failed to resolve the non-compliance grievance through the Informal or Formal Step A processes. (USPS SOF ¶ 38; Union SOF ¶¶ 18-19.) At the Formal Step B stage, USPS management contended that plaintiff's removal grievance was never properly appealed to the Formal Step A stage and thus was improperly included in the "blitz" process. The USPS also argued that, because there had been no appeal to the Formal Step A stage, it had removed plaintiff from its rolls on January 12, 2010. (Union SOF ¶ 20.) The Formal Step B processes culminated in an "impasse," after which the Union timely advanced the non-compliance grievance to arbitration. (*Id.* ¶ 23.)

On April 27, 2011, the Union argued before the arbitrator that the USPS had waived any timeliness defenses regarding plaintiff's removal grievance by failing to raise them during the "blitz" process, and therefore, the USPS had breached the CBA by refusing to allow plaintiff to return to work after the settlement agreement negotiated during the "blitz" had been signed. (*Id.* ¶ 25.) On May 24, 2011, the arbitrator entered her opinion denying the grievance. (*Id.* ¶ 26.) The arbitrator concluded:

> The Union failed to establish that a grievance concerning the [plaintiff's] Notice of Removal was pending when the Union and the Postal Service met on August 19, 2010. The Formal Step A Blitz Team was authorized to resolve pending grievances. The Blitz Team exceeded its authority by agreeing to "reinstate" the grievant. The grievance is denied.

(Arbitration Award, May 24, 2011 [Dkt. No. 30-1 Ex. 13] at 1.) The arbitrator emphasized that "the Union presented no evidence based on personal knowledge that a grievance was turned in at all, let alone turned in within the 14 day time limit." (*Id.* at 3.) Because there was no evidence

5

of a pending grievance at the time of the "blitz," "there was no valid settlement agreement between the parties." (*Id.*) The Union chose not to bring a lawsuit challenging the arbitrator's decision because, as according to the Union, an arbitrator's decision is binding so long as she "construes and applies" the CBA. (Union SOF ¶ 26.)

On November 14, 2011, plaintiff filed this hybrid § 301/fair representation action against the USPS and the Union in the Court of Federal Claims. On July 31, 2012, that Court concluded that it lacked subject matter jurisdiction over the claims and transferred the case to this Court, *see Carrington v. United States,* 106 Fed. Cl. 129, 133-36 (2012), and on February 25, 2013, this Court denied the government's motion to dismiss. *See Carrington v. United States*, 926 F. Supp. 2d 3 (D.D.C. 2013). Both defendants now move for summary judgment.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties moving for summary judgment bear the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether genuine issues of material fact exist, a court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position, *id.* at 252, and a moving party may succeed by pointing to the absence of evidence proffered by the non-moving party. *Celotex,* 477 U.S. at 322. Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

While an employee may bring suit against his employer for a breach of a collective bargaining agreement, he is ordinarily bound by the result of any grievance or arbitration remedies provided for in that agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983). An employee may, however, challenge the result of a grievance or arbitration procedure "when the union representing the employee . . . acts in such a . . . fashion as to breach its duty of fair representation." *Id.* at 164. In such an instance, the employee may bring under § 301 of the LMRA a so-called "hybrid" claim comprised of "two causes of action: one against the union for breach of the duty of fair representation and one against the employer for breach of contract." *Price v. Unite Here Local 25*, 883 F. Supp. 2d 146, 150-51 (D.D.C. 2012) (quoting *DelCostello*, 462 U.S. at 164). To prevail against either defendant, an employee must prove both elements of the "inextricably interdependent" hybrid claim. *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981); *see Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976) ("[Employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."). Procedurally, an employee-plaintiff "must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer." *United Parcel Service*, 451 U.S. at 67; *see also Price*, 883 F. Supp. 2d at 151.

Judicial review of a union's representation of its members is "highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). As a result, the Supreme Court has narrowly defined the duty of fair representation. A union breaches its duty only when its "conduct toward a member of the collective bargaining unit is arbitrary,

discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also DeCostello*, 462 U.S. at 164 ("discriminatory, dishonest, arbitrary, or perfunctory").

Plaintiff concedes that the Union representatives did not discriminate or harbor ill will towards him. (Pl.'s Opp'n to Defs.' Mots. for Summ. J ("Opp'n"), April 2, 2014 [Dkt. No. 32] at 15 ns. 6-7.) Instead, plaintiff argues that the Union's actions were arbitrary, perfunctory, or dishonest. (*Id.* at 15-17.) "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational," *Air Line Pilots Ass'n*, 499 U.S. at 67 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953)), that is, "without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* at 45-46. "[M]ere negligence, even in the enforcement of a collective-bargaining agreement, [does] not state a claim for breach of the duty of fair representation." *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990); *see also Jacoby v. NLRB*, 325 F.3d 301, 309-10 (D.C. Cir. 2003); *Thomas v. NLRB*, 213 F.3d 651, 657 (D.C. Cir. 2000).

## ANALYSIS

Plaintiff argues that there exist genuine issues of material fact as to whether the Union fulfilled its duty of fair representation when representing plaintiff during both his removal and non-compliance grievances. The Court considers each grievance process separately and views the evidence in the light most favorable to plaintiff.

## A. Removal Grievance

Although not entirely clear from his brief, plaintiff first seems to argue that the Union did not fairly represent him during his removal grievance because it failed to (1) timely submit a grievance to Informal Step A; (2) timely appeal the grievance to Formal Step A; and (3) keep plaintiff apprised of the status of his grievance. (Opp'n at 3, 5.) Plaintiff does not rest his case on the reasonableness of the Union's *individual* actions, but instead, he argues they *collectively* establish a "pattern of dishonest conduct and failures" that violated the Union's duty of fair representation. (Opp'n at 17.)

Although courts generally consider a plaintiff's fair representation claim before determining whether the employer breached any contractual duty, *see United Parcel Service*, 451 U.S. at 67, in this case the Court skips directly to the second question. For, even assuming that the Union's actions in representing plaintiff with respect to his removal grievance were arbitrary,[1] plaintiff presents *no* evidence that the USPS breached any provision of the CBA in

---

[1] This is not an assumption the Court adopts lightly. For no reasonable jury could conclude that the Union actions (or inactions) about which plaintiff complains, when considered in isolation, constituted a breach of the duty of fair representation. It is of course true that a Union's failure to timely file or appeal a grievance may breach its duty of fair representation. *See, e.g.*, *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1229 (E.D.N.Y. 1990). However, it was completely reasonable for the Union to wait (at most) twelve days after it learned of the Notice of Removal from Ms. McCall to initiate the removal grievance. For the CBA provides that a Union may initiate a grievance "within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance." (CBA Art. 15.2 Informal Step A(a).) *See Wilson v. Am. Postal Workers Union*, 433 F. Supp. 2d 444, 449 (D. Del. 2006) (failure of Union to timely file a grievance was neither arbitrary nor perfunctory where there was "confusion as to when the time limit for filing began to run," the Union pressed the grievance on the merits, and fought the timeliness issue). Likewise, there is no evidence that the Union's attempted – but apparently unsuccessful – appeal of the removal grievance to Formal Step A was a result of anything more than negligence. Indeed, because the USPS accepted as timely filed the appeals for all of the other grievances on the list of "Formal Step A Appeals" submitted by the Union on December 31, 2009 (Union SOF ¶ 21), it is impossible to conclude that the process by which the Union attempted to appeal the removal grievance to Formal Step A was arbitrary or perfunctory. *Cf. Ruzicka v. Gen. Motors Corp.*, 649 F.2d 1207, 1212 (6th Cir. 1981) ("In relying on a past practice, a union's [action] is based on a wholly relevant consideration, is not intended to harm its member, and is not the type of arbitrariness which reflects reckless disregard for the rights of the individual employee."). Finally, although the Union could have kept plaintiff better informed of the status of his removal grievance, "that

9

relation to the removal grievance.[2] While plaintiff attempts to raise a factual issue as to whether the USPS acted in accordance with CBA when issuing his Notice of Removal (*cf.* Opp'n at 6-8), no reasonable jury could conclude that USPS's undisputed mailing of the Notice to plaintiff's address of record was inconsistent with the CBA. (*See* Dep. of Marcia McKeithan, Jan. 8, 2014 [Dkt. No. 30-1 Ex. 16] at 26, 28.) Plaintiff points to no contractual obligation for the USPS to do anything more than mailing the Notice to his address of record. (*See id.* at 28 ("My management obligation is to send [the Notice] to the address of record."). Although there is a dispute of fact as to whether the Notice was delivered to plaintiff's address, there is no dispute as to whether the USPS mailed it to the correct address. Moreover, even if the USPS had an incorrect address on file for plaintiff, it was plaintiff – not the USPS – who was responsible for keeping his mailing address up-to-date with USPS management. (USPS Employee and Labor Relations Manual [Dkt. 30-1 Ex. 4] § 6665.5.)

Because plaintiff must succeed on both elements of his hybrid claim, *United Parcel Serv.*, 451 U.S. at 66, the Court will grant summary judgment for defendants as to plaintiff's claims regarding his removal grievance.

---

alone does not establish a breach of the union's duty." *Samosky v. United Parcel Serv.*, 944 F. Supp. 2d 479, 509 (S.D. W.Va. 2013); *see also Harrigan v. Caneel Bay, Inc.*, 745 F. Supp. 1122, 1128 (D.V.I. 1990) ("[A] union need not inform the employee of his or her grievance's progress."). It is only because plaintiff presents his arguments based on the *cumulative* nature of these "failures" that the Court has decided to assume a breach and to proceed to the second step. *Cf. Thompson v. Int'l Ass'n of Machinists*, 258 F. Supp. 235, 239 (E.D. Va. 1966) (noting that "[t]aken singly the union's omissions might not constitute lack of fair representation," but finding a breach of duty on the totality of the circumstances).

[2] Plaintiff had alleged in his complaint that the USPS violated the CBA because "[t]he USPS did not have just cause to terminate [him] because [his] absences from work were for a documented medical reason." (Compl. ¶ 21.) Plaintiff, unable to dispute his unauthorized poor attendance, seems to have abandoned that position in his opposition brief. (*Cf.* Opp'n at 6-8.)

### B. Non-Compliance Grievance

Plaintiff also argues that the Union breached its duty of fair representation by failing to investigate the timeliness of his removal grievance and to provide such evidence during the non-compliance grievance arbitration proceeding. (Opp'n at 11-12.) The parties focus at length on whether plaintiff's removal grievance was in fact timely filed. (*See e.g.*, USPS Mot. at 13; Union Mot. at 13-15; Opp'n at 3-11.) Nonetheless, defendants are entitled to summary judgment on this claim because, while the timeliness of the removal grievance may be disputed, it is also immaterial.[3] For the timeliness of the removal grievance was irrelevant to the Union's reasonable arbitration strategy.

Instead of investigating the timeliness of plaintiff's removal grievance and presenting those disputed facts to the arbitrator, the Union chose to argue that USPS had waived any timeliness defense by failing to raise the issue during the "blitz" stage. (Decl. of Paul Simmons [Dkt. No. 29-5] ¶ 24.) The Union based its argument on the waiver provision in the CBA, which reads: "if the Employer fails to raise the issue of timeliness at Formal Step A, or at the step at which the employee or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived." (CBA Art. 15.3.B.)

Although ultimately unsuccessful, the Union's decision to rely on this CBA provision, rather than investigating the timeliness of the removal grievance and presenting that claim, was neither arbitrary nor perfunctory, nor did it "seriously undermine[] the integrity of the arbitral

---

[3] Viewed in the light most favorable to plaintiff, his grievance was timely filed. There is conflicting evidence as to when plaintiff "or the Union first learned or may reasonably have been expected to have learned" of his pending removal, therefore triggering the fourteen-day filing deadline. (*See* CBA Art. 15.2 Informal Step A(a).) For instance, there is evidence that the notice of removal was never received at his apartment (McCall Decl.¶ 5), and that, because of that and plaintiff's hospitalization, neither he nor the Union could reasonably have been expected to learn of his pending removal before December 17 or 18, 2009, when Ms. McCall spoke to a Union representative about the pre-disciplinary interview letter. (*Id.* ¶ 8.) Under this set of facts, the Union's filing of a grievance to Informal Step A on December 29, 2009, would have been timely.

11

process." *Hines*, 424 U.S. at 567. The legal strategy had a reasonable basis in fact, since USPS did not raise the timeliness of plaintiff's removal grievance during the "blitz" stage, and the language of the CBA "arguably supported the Union's position."[4] *See Emmanuel v. Int'l Bhd. of Teamsters*, 426 F.3d 416, 421 (1st Cir. 2005) (no violation of duty of fair representation where the collective bargaining agreement at issue "arguably supported the Union's position"). Unions are afforded wide latitude in representing employees in grievance proceedings and "[t]actical errors are insufficient to show a breach of the duty of fair representation." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989); *see also Patterson v. Int'l Bhd. of Teamster*, 121 F.3d 1345, 1349-50 (9th Cir. 1997) ("It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued."); *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970) ("[P]roof that the union may have acted negligently or exercised poor judgment [at arbitration] is not enough to support a claim of unfair representation."). Without evidence that the Union acted in bad faith during the arbitration proceedings, the Court cannot intercede on behalf of plaintiff merely because the Union's reasonable decision, with hindsight, worked to his disadvantage. *Marquez*, 525 U.S. at 45-46; *Barr*, 868 F.2d at 43-44. Therefore, the Court will grant summary judgment for defendants as to plaintiff's claims regarding the non-compliance grievance.

### C. Back Pay

Plaintiff also brought a claim for back pay from the USPS pursuant to 5 U.S.C. § 5596. (Compl. ¶¶ 14-19.) "The Back Pay Act does not create an alternative cause of action, rather it is an auxiliary measure that only operates at the relief stage." *Gilbert v. F.D.I.C.*, 950 F. Supp.

---

[4] Indeed, the Joint Contract Administration Manual, co-authored by the USPS and the Union, interprets Article 15.3.B to mean that even "[i]f management asserts that a grievance is untimely filed at Informal Step A, it must raise the issue in the written Formal Step A decision . . . or the objection is waived. It is not sufficient to assert during the Informal Step A meeting that a grievance is untimely." (USPS-NALC Joint Contract Administation Manual [Dkt. No. 29-4 Ex. B] ¶ 15.3.B.)

1194, 1197 (D.D.C. 1997). Because plaintiff's claim for back pay is contingent upon the survival of his hybrid claims, the USPS is entitled to summary judgment on the back pay claim as well.

## CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment on plaintiff's hybrid § 301/fair representation claims and the USPS is entitled to summary judgment on plaintiff's claim for back pay. The Court will issue an Order consistent with this Memorandum Opinion on this day.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: May 19, 2014